UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

THOMAS G. STEWARD,

                    Petitioner,                                    **REPORT AND**
                                                                   **RECOMMENDATION**

          V.                                                       01-CV-569


HAROLD GRAHAM,

                    Respondent.

─────────────────────────────────────────


## I. INTRODUCTION

        Petitioner, Thomas Steward, acting *pro se*, commenced this action seeking habeas

corpus relief under 28 U.S.C. § 2254.  Petitioner is presently an inmate at the Auburn

Correctional Facility.  In 1996, he was convicted in a New York State court of Second

Degree Murder, two counts of First Degree Robbery, and Fourth Degree Criminal

Possession of a Weapon and was thereafter sentenced to a term of imprisonment.

Petitioner contends that his conviction was imposed in violation of his constitutional rights

and should therefore be vacated.

        This matter was referred to the undersigned by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is

presently before this Court for a report and recommendation. (Docket No. 58).


## II. BACKGROUND

**A.      Facts**

        It is undisputed that, in the early morning hours of February 27, 1993, James Milo

("Milo") was fatally bludgeoned and slashed in the city of Syracuse, New York.

The following factual summary is taken from the testimony at Petitioner's state court proceedings.   On March 21, 1993, Petitioner was arrested and charged with criminal possession of a controlled substance in the seventh degree and resisting arrest.   (SH[1] 7/19/94 at 4-5, 9, 17).   He used the alias "James Giles" to identify himself and volunteered information to the police pertaining to the unrelated homicide of Milo.   (SH 7/19/94 at 8, 13, 20-21).   Officers interviewed Petitioner and he gave a written and signed statement containing information about Milo's murder.   (SH 1/31/94 at 8-10).   Later that same morning, the police continued to interview Petitioner regarding Milo's murder, after which he signed another written statement using "James Giles" as his name.   (SH 3/10/94 at 6-15).

On March 22, 1993, Petitioner was arraigned as "James Giles" in Syracuse City Court on the misdemeanors.   (SH 8/3/94 at 4-5).   The city court entered pleas of not guilty for Petitioner under his alias and assigned counsel from the Hiscock Legal Aid Society.   (A at 3).[2]   Petitioner was released on his own recognizance.   (A at 4).

On March 24, 1993, the police learned Petitioner's actual identity and he was arrested on a separate parole violation.   (SH 5/24/94 at 42-43 & SH 1/31/94 at 24, 34, 36).   Petitioner was advised of his Miranda[3] rights.   (T at 1045)[4].   Petitioner waived his right to

---

[1]References preceded by "SH" are to the transcript pages of Petitioner's suppression hearing. Petitioner's suppression hearing was held on several different dates, due to adjournments and new counsel.  For purposes of clarity "SH" will precede a date referencing the date of the hearing transcript will.

[2]References preceded by "A" are to the transcript pages of Petitioner's arraignment held before the Honorable Langston McKinney, Syracuse City Court Judge, on March 22, 1993.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

[4]References preceded by "T" are to the transcript pages of Petitioner's trial before Onondaga County Court Judge John J. Brunetti.

2

counsel and agreed to discuss the Milo homicide with the police. (SH 1/31/94 at 16-20). During this discussion, Petitioner renounced some of his earlier statements to the police about the homicide and also made some inculpatory statements.  (T at 820, 823-833). Petitioner did not agree to put these statements into writing.  (T at 838).

On December 10, 1993, an Onondaga County grand jury issued Indictment Number 93-1191-1, charging Petitioner with two counts of Murder in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") §125.25(3) and §125.25(1)[5]; two counts of Burglary in the First Degree, in violation of N.Y.P.L. §140.30(2) and §140.30(3); Burglary in the Second Degree, in violation of N.Y.P.L. § 140.25(2); two counts of Robbery in the First Degree, in violation of N.Y.P.L. §160.15(1) and §160.15(3); Robbery in the Second Degree, in violation of N.Y.P.L. §160.10(2)(a); one count of Petit Larceny, in violation of N.Y.P.L. §155.25; and, one count of Criminal Possession of a Weapon in the Fourth Degree, in violation N.Y.P.L. §265.01(2).

**B.    State Trial Court Proceedings**

The Honorable James W. McCarthy, Onondaga County Court Judge, presided over some of Petitioner's trial court proceedings.  On January 31, 1994, a Huntley[6] hearing was held regarding the voluntariness of Petitioner's March 22 and March 25, 1993 statements.

Following the Huntley hearing, Judge McCarthy granted Petitioner's motion to suppress the statements, finding that the statements had been taken in violation of

---

[5]Unless otherwise indicated, all references to the N.Y.P.L. are to McKinney 1998.

[6] A hearing pursuant to People v. Huntley, 255 N.Y.S.2d 838 (1965), to determine the voluntariness of Petitioner's statements to the police.

3

Petitioner's right to counsel.  (SR at A602)[7].  The People appealed Judge McCarthy's decision and on July 14, 1995, the Appellate Division, Fourth Department reversed, holding that the statements should not have been suppressed because Petitioner was not represented by counsel on any pending charge at the time he made the challenged statements.  People v. Steward, 630 N.Y.S.2d 187 (4th Dep't 1995).  Petitioner appealed the Fourth Department's ruling and on June 11, 1996, the Court of Appeals affirmed the Fourth Department.  People v. Steward, 88 N.Y.2d 496 (1996).  Upon remand, the trial court also found Petitioner's statements were voluntarily made.  (SR at A645).

Petitioner's trial began on November 1, 1996, with the Honorable John J. Brunetti, Onondaga County Court Judge, presiding.  At trial, evidence was presented that Milo died of "blunt traumatic injuries" and Petitioner admitted in one of his statements that he struck Milo with an iron barbell.  (T at 825-826, 921, 930, 1051-1053).  On November 14, 1996, the jury found Petitioner guilty of one count of Murder in the Second Degree, two counts of Robbery in the First Degree, and Possession of a Weapon in the Fourth Degree.  (T at 1379-81).

On May 9, 1997, Petitioner was sentenced to concurrent terms of twenty-five years to life for his conviction of Murder in the Second Degree, eight and one-third to twenty-five years for the two counts of Robbery in the First Degree, and one year for Criminal Possession of a Weapon in the Fourth Degree.

## C.   State Appellate Proceedings

---

[7]References preceded by "SR" are to the state court records provided in this case.  The "A" after "SR" refers to the Appendix page number.

4

On January 2, 1997, Petitioner filed a motion pursuant to CPL § 440 to set aside his verdict.  Judge Brunetti denied the motion on April 11, 1997.

Thereafter, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner raised the following seven arguments in support of his appeal: (1) the trial court's conduct during jury deliberations deprived him of a fair trial, (2) the verdict was against the weight of the evidence,  (3) the statements he made to the police should have been excluded because they were made involuntarily, (4) the trial court improperly prevented him from presenting a defense, (5) the trial court erred in admitting certain pieces of evidence, (6) the trial court erred in allowing the prosecution to use Petitioner's drug use in their direct case, and (7) the cumulative errors deprived Petitioner of a fair trial.

In a decision issued on December 31, 1998, the Appellate Division unanimously affirmed Petitioner's conviction.  People v. Steward, 684 N.Y.S.2d 109 (4th Dep't 1998).  The Appellate Division rejected Petitioner's argument that he was denied a fair trial as a result of the trial court's conduct during jury deliberations.  Id. at 110.  The appeals court also found that Petitioner's statements were voluntarily made, that the verdict was not against the weight of the evidence, and that the contested evidence and testimony were properly received.  Id. at 109-110.  On March 18, 1999, the Court of Appeals denied Petitioner's motion for leave to appeal.  People v. Steward, 93 N.Y.2d 879 (1999).

On February 8, 2000, Petitioner filed a second CPL § 440 motion to vacate his judgment of conviction alleging trial errors and ineffective assistance of counsel.  The trial court denied Petitioner's motion by Decision and Order dated June 9, 2000.

5

**D.     Federal Habeas Corpus Proceedings**

Petitioner commenced this action on April 19, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  On May 17, 2001, Petitioner was ordered by the Court to file an Amended Petition to clarify his claims and to help the Court determine whether his Petition was timely.  (Docket No. 3).

Petitioner filed an Amended Petition on May 31, 2001.  (Docket No. 5).   In his Amended Petition, Petitioner asserted the following seven grounds for habeas relief: (1) that the trial court's conduct during jury deliberations deprived him of a fair trial, (2) that the verdict was against the weight of the evidence, (3) that his statement to police was involuntarily made, (4) that the trial court prevented him from presenting a defense, (5) that the trial court erred in admitting a brown leather coat and white Nike sneakers in to evidence, (6) that the trial court erred in allowing the prosecution to raise his drug use in their direct case, and (7) that the cumulative errors deprived him of a fair trial.   (Docket No. 5).  Thereafter, Respondent filed submissions in opposition, asserting that some of Petitioner's claims were unexhausted and the rest were without merit.  (Docket No. 15 & 16).

In May of 2003, Petitioner moved for a stay of his habeas proceedings so that he could exhaust "numerous federal claims" contained in his Amended Petition.  (Docket No. 21).[8]  Petitioner's motion was granted by the Honorable Gary L. Sharpe in an Order dated

_____

[8]In Petitioner's Motion for a Stay, he stated that he wished to exhaust his state remedies on "numerous federal claims."  (Docket No. 21).  Without specifically listing which claims he wished to exhaust, he cited to Respondent's Reply Memorandum, wherein Respondent argued that two of his seven grounds for habeas relief were unexhausted.  (Id.).  The two grounds listed by Respondent were (1) Petitioner's claim of trial court misconduct and (2) his claim that cumulative errors deprived him of a fair trial.  See (Docket No. 16).  Petitioner did not list "ineffective assistance of trial counsel" as a ground for habeas relief in his Amended Petition and did not specifically reference that claim in his stay motion.  See (Docket No. 5 & 21).

6

July 1, 2003.  (Docket No. 23).

On September 20, 2003, Petitioner filed a third CPL § 440 motion with the trial court, claiming ineffective assistance of trial counsel.  Petitioner's motion was denied as both procedurally barred and on the merits on January 21, 2004.  On February 24, 2004, Petitioner appealed that denial to the Appellate Division,  Fourth Department.  (Exhibit 8)[9].  Permission for leave to appeal was denied by the Appellate Division on April 14, 2004.  (Exhibit 10).   Nothing in the record denotes whether Petitioner exhausted his other "numerous federal claims."

Thereafter, Petitioner filed a Second Amended Petition on June 7, 2005.  (Docket No. 50).  Petitioner's Second Amended Petition lists only three grounds in support of habeas corpus relief, which included two claims from his previous petition and one new claim of ineffective assistance of counsel.  Specifically, Petitioner's three claims are (1) that he was deprived of effective assistance of counsel, (2) that his statement was involuntarily made on March 25, 1993 and should have therefore been excluded from evidence, and (3) that the trial court erred in allowing evidence of Petitioner's drug use at trial. See (Docket No. 50).  Thereafter, the Respondent filed a response outlining its position.  (Docket No. 55).

This Court issued an order on March 12, 2007 requesting that Petitioner's trial attorneys address Petitioner's allegations with respect to their assistance in his defense.  This Court also requested Respondent to address additional questions that had not been adequately addressed in their reply memorandum.  See (Docket No. 60).  Thereafter, Petitioner's trial attorneys and Respondent filed affidavits with the Court addressing the

---

[9]"Exhibit 8" is attached to the Answer to the Second Amended Petition filed by Respondent.

order.  (Docket No. 61 & 62).  On May 30, 2007, Petitioner filed his response to those affidavits.  (Docket No. 66).

For the reasons that follow, the Court recommends that Steward's petition for a writ of habeas corpus be denied and that his petition be DISMISSED.

## III. DISCUSSION

### A.     Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some

increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

As set forth above, Petitioner asserts three claims in support of his Second Amended Petition: (1) that he was deprived of effective assistance of counsel, (2) that his statement was involuntarily made on March 25, 1993 and should have therefore been excluded from evidence, and (3) that the trial court erred in allowing evidence of Petitioner's drug use into evidence.  (Docket No. 50).

**1.     Ineffective Assistance of Counsel**

Petitioner's first claim for habeas relief is that his defense counsel failed to provide an adequate defense.[10]  Specifically, Petitioner claims that his trial attorneys failed to review over 700 pages of police reports that would have exonerated him.  Respondent argues that Petitioner's claim is procedurally barred, and in any event, Petitioner's defense counsel did not fall below objective standards of reasonableness.

**a.     Procedural Bar**

As this Court has previously noted, "[w]here the highest state court that rendered a

---

[10]Petitioner was represented by court appointed attorney, James McGinty, Esq. until February 4, 1994, where at the second date of his suppression hearing, Petitioner requested that he be allowed to hire a new attorney.  (SH 2/4/94 at 3-8).  Thereafter, Petitioner was represented by Emil Rossi, Esq. and Michael Vavonese, Esq.  (SH 3/10/94 at 3).

judgment in the case 'clearly and expressly states that its judgment rests on a state procedural bar,' such procedural default constitutes independent and adequate state grounds to deny habeas relief." Corney v. Henri, 05-CV-338, 2007 WL 1388118, at *5 (N.D.N.Y. May 9, 2007) (quoting Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).

In such cases, a federal court is generally barred from reviewing the petitioner's claims. A federal habeas court may review a petitioner's claims only if the petitioner demonstrates (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will "result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

As to the first test, "cause" is defined as " 'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To demonstrate prejudice, the petitioner must show more than the errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L .Ed.2d 816 (1982). Where a petitioner is unable to show cause, the Court need not consider actual prejudice. See McCleskey, 499 U.S. at 502, 111 S.Ct. 1454.

In the present case, the trial court found that Petitioner's ineffective assistance of counsel claim was procedurally barred under applicable New York law.  To wit, in its decision

denying Petitioner's third CPL § 440 motion, the trial court noted that Petitioner had raised

an ineffective assistance of counsel claim "on his direct appeal and in his previous § 440

motion . . . and both times his claims were rejected as lacking merit." (Exhibit 7)[11].

The court accordingly rejected the claim as barred pursuant to NY CPL §§ 440.10

(2)(a) and 440.10 (3)(a-c).  The state court then proceeded to review the claim on the merits

in the alternative, "[d]espite the procedural bars to the Defendant's claim."  However, the

state court's consideration of the merits in the alternative does not alter the fact that

Petitioner's claim was determined to be procedurally barred upon an adequate and

independent state law ground. Powers v. Lord, 462 F. Supp.2d 371, 377 (W.D.N.Y. 2006)

("The bar on habeas review resulting from a procedural default applies even where, as here,

the state court issues an alternative holding addressing a procedurally defaulted claim on the

merits.") (citing Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).

This Court notes that Petitioner did not raise this particular ineffective assistance of

counsel claim either on direct appeal or in his first or second § 440 motions. It appears that

this particular claim was raised for the first time in the third § 440 motion.  As such, CPL

§440.10 (2)(a) and 440.10 (3)(b), which bar a claim that has previously been reviewed and

decided upon a prior motion, would not appear to have barred Petitioner's ineffective

assistance of counsel claim under New York law.

However, the trial court also specifically relied upon CPL § 440.10 (3)(c) in support of

its finding that Petitioner's ineffective assistance of counsel claim was procedurally barred.

Pursuant to this subsection, a court may deny a motion to vacate if the motion is based upon

---

[11]"Exhibit 7" is attached to the Answer to the Second Amended Petition filed by Respondent.

a claim the defendant could have raised the claim at issue in a prior CPL 440 motion, but unjustifiably failed to do so. See CPL § 440.10 (3)(c)  ("[T]he court may deny a motion to vacate a judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."); see also People v. Vigliotti, 806 N.Y.S.2d 841, 842 (4th Dep't 2005) ("Defendant's remaining contentions are unavailing inasmuch as they relate to matters that could have been raised on direct appeal or in the prior CPL 440.10 motion."); People v. Cochrane, 810 N.Y.S.2d 670, 671 (2d Dep't 2006) ("To the extent the defendant's contentions concern matter dehors the record, they could have been raised on either one of his two previous CPL 440.10 motions, and thus the Supreme Court's denial of the current motion without a hearing was within its discretion, which we conclude was providently exercised."); People v. Brown, 807 N.Y.S. 2d 24, 24 (1st Dep't 2005) ("The court properly exercised its discretion in summarily denying defendant's CPL 440.10 motion. The motion was procedurally barred, because upon defendant's previous 440.10 motion, he 'was in a position adequately to raise the ground or issue underlying the present motion but did not do so.'").

Numerous courts in this Circuit have concluded that a state court denial based upon CPL § 440.10 (3)(c) constitutes an adequate and independent state law ground, which forecloses federal habeas corpus review. See, e.g. Ryan v. Mann, 73 F. Supp. 2d 241, 248 (E.D.N.Y. 1998) (finding habeas claim barred because state court denial was based upon alternative state procedural grounds, including CPL § 440.10 (3)(c)); Collins v. Conway, No. 04-Civ-4672, 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006) ("Petitioner's claims are procedurally barred because these claims were raised by Petitioner in his NYCPL § 440.10

13

motion, and were dismissed on procedural grounds pursuant to NYCPL §§ 440.10(3)(a) and (c), which federal courts in this circuit have found to be adequate and independent procedural bars for the purposes of federal habeas review."); Rosario v. Bennett, 01-Civ-7142, 2002 WL 31852827, at *22 (S.D.N.Y. Dec. 20, 2002)(holding that petitioner's failure to assert claim "as part of his first § 440 motion mandates dismissal of that claim under the adequate and independent state ground doctrine").

In the present case, the state court concluded that Petitioner's ineffective assistance claim was procedurally barred based upon, inter alia, CPL § 440.10 (3)(c).  As such, habeas review of the claim is foreclosed unless Petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Petitioner either possessed or reasonably could have obtained the requisite information at the time he filed his prior § 440.10 motions.  See (Exhibit 1 at 8-14)[12].  In any event, as discussed below, Petitioner's claim, even if considered on the merits, does not entitle him to habeas relief.  As such, Petitioner has not shown prejudice nor demonstrated a miscarriage of justice sufficient to excuse the procedural bar.  Accordingly, this Court recommends that Petitioner's first claim for habeas relief be DENIED as procedurally barred.

### b.    Merits of Ineffective Assistance Claim

Even if Petitioner's claim was not procedurally barred and/or if that bar were to be excused, Petitioner would not be entitled to habeas relief based upon his ineffective

---

[12]"Exhibit 1" is attached to the Answer to the Second Amended Petition filed by Respondent and sets forth that Petitioner made his Freedom of Information requests starting right after his trial in late 1996.

assistance of counsel claim.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test.  First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. <u>Id.</u> at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." <u>Id.</u>

Second, the petitioner must show that counsel's deficient performance prejudiced him. <u>Id.</u> at 694.  To establish the "prejudice" prong of the <u>Strickland</u> test, a petitioner must show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. <u>Id.</u> at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697.

In the present case, Petitioner claims that his trial attorneys (Mr. Rossi and Mr. Vavonese) were ineffective because they allegedly failed to review over 700 pages of documents provided to them by the prosecution.  Petitioner argues that if counsel had reviewed these documents, they would have pursued a different defense strategy, which would have led to an acquittal.  To understand the nature of Petitioner's claim, it is necessary to briefly review some of the factual background.

On March 21, 1993, Petitioner was arrested for drug possession and resisting arrest.

(SH 7/19/94 at 4-5, 9, 17).  While in custody, Petitioner volunteered information regarding the murder of James Milo, which was unrelated to Petitioner's arrest.  Specifically, Petitioner told the police that Mark Broughton (a/k/a "Unique") and Ryan Graham (a/k/a "Champagne") had murdered Milo.  Petitioner also signed written statements accusing Graham and Broughton.  (SH 3/10/94 at 6-15).

The police later discovered Petitioner's true identity and he was re-arrested. According to the testimony at trial, Petitioner initially suggested that a person named Kevin Bennie murdered Milo, but later confessed that he had committed the crime.  (T at 827-829).

Petitioner's trial attorneys made the strategic decision to advance the theory that Graham and Broughton were the real killers.  This strategy was based upon, *inter alia*, testimony from two witnesses, Edward Mersfelder and Nadine Smith.  Mersfelder testified that he saw Graham on the night of the murder at the entrance to Milo's apartment. According to Mersfedler, he saw Graham and Milo arguing and heard Graham tell Milo that he was going to "fuck him up." (T at 1215-1217).  Smith testified that she received a call from Broughton at 3:00 a.m. on the night of the murder.  According to Smith, Broughton told her that a "faggot" had his throat slashed and was killed at 1462 East Genesee Street, the scene of the crime.   (T at 1149, 1164, 1180-1184).  Testimony in the record from an Officer Quonce also indicated that Broughton and Graham had discussed the Milo murder during the morning hours of February 27, 1993, well before the police discovered Milo's body.  (T at 567).

Petitioner argues that the defense strategy described above was flawed.  Specifically, Petitioner claims that if his trial attorneys had reviewed certain discovery documents, they would have concluded that Smith and Mersfelder were lying and that a person named Jason

Smithers had actually committed the murder.[13]

In light of Petitioner's allegations, this Court deemed it appropriate to provide the trial attorneys with an opportunity to respond to the claims and explain their strategy.  See Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998).  This Court issued an Order directing the trial attorneys to state whether they reviewed the documents in question and, if so, explain their reasons for pursuing other avenues in Petitioner's defense.  In response to that Order, Petitioner's trial attorneys filed a joint affidavit stating that they "reviewed carefully all of the discovery materials" in question and kept Petitioner apprised of their "strategy and purpose."  (Docket No. 61 at p.4).[14]  Attorneys Rossi and Vavonese stated that, in their view, the defense strategy of portraying Broughton and Graham as the real killers was the most viable strategy.  Counsel explained that this decision was based upon the available testimony from Smith, Mersfelder, and Quonce, all of which tended to implicate Broughton and Graham.  (Docket No. 61, at pp. 6-7).  Defense counsel also identified several problems with

---

[13]During the state court proceedings, Petitioner also argued that counsel failed to conduct a proper investigation regarding hair and DNA testing.  However, Petitioner did not assert these claims in the original habeas Petition, Amended Petition, Second Amended Petition or Traverse.  See (Docket No. 1, 5, 50, & 57).  In any event, even if such claims had been raised they would be procedurally barred for the reasons set forth above and without merit.  See Powers v. Lord , 462 F. Supp.2d 371, 380-81 (W.D.N.Y. 2006) (failure to obtain DNA testing did not rise to the level of ineffective assistance of counsel); Smith v. Edwards, No. 98 Civ. 7962, 2000 WL 709005, at *4 (S.D.N.Y. May 31, 2000) (denying ineffective assistance of counsel claim based upon trial counsel's failure to arrange for DNA testing).

[14]Petitioner suggests that the submission of a joint affidavit was improper and that each of the attorneys should have submitted his own affidavit.  See (Docket No. 66).  However, by signing the joint affidavit, both attorneys averred that the statements contained therein were true and adopted the same as their own.  This Court was unable to find, and Petitioner did not cite, any authority for the proposition that the use of a joint affidavit is per se improper.  Indeed, numerous courts in this Circuit have referred to and relied upon joint affidavits in published decisions.  See, e.g., Phibro Energy, Inc. v. Empresa de Polimeros de Sines Sarl, 720 F. Supp. 2d 312, 313 n. 2 (S.D.N.Y. 1989) ("This Court will treat this joint affidavit as if separate, but identical, affidavits were filed by Bento Araujo and Manuel Goncalves."); Molinari v. Powers, 82 F. Supp. 2d 57, 66 n. 6 (E.D.N.Y. 2000) (referring to joint affidavit).

pursuing a strategy of suggesting that Smithers killed Milo, including forensic evidence tending to exculpate Smithers and evidence of an alibi. (Docket No. 61, at p. 8 n.10).

The Second Circuit has noted "courts should not confuse true ineffectiveness with losing trial tactics or unsuccessful attempts to advance the best possible defense. The Constitution guarantees a defendant a fair trial, not a perfect one." Henry v. Poole, 409 F.3d 48, 58 (2d Cir. 2005)(citing Delaware v. Van Arsdall, 475 U.S. 673, 681(1986). Moreover, in Strickland, the Supreme Court held that:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690-91.

Numerous courts in this Circuit have recognized that "[g]enerally, the decision whether to pursue a particular defense is a tactical choice which does not rise to the level of a constitutional violation . . . [and] the habeas court will not second-guess trial strategy . . . ." Campbell v. Greene, 440 F.Supp.2d 125, 150 (N.D.N.Y. 2006) (quoting Nieves v. Kelly, 990 F.Supp. 255, 264 (S.D.N.Y.1997)); see also Schwamborn v. United States, No. 06-CV-3178, 2007 WL 1799171, at *5 (E.D.N.Y. June 20, 2007) ("An informed decision to pursue a litigation strategy, even if that strategy turns out badly for the defendant or seems unwise in retrospect, does not constitute ineffective assistance of counsel so long as it is a 'conscious, reasonably informed decision made by an attorney with an eye to benefitting his client.'").

In the present case, this Court is satisfied, based upon its review of the record,

18

including the affidavit submitted by defense counsel pursuant to <u>Sparman</u>, that counsel made

an informed decision to pursue the strategy at issue and that said decision was reasonably

informed and made with an eye to benefitting Petitioner.   Further, the trial court noted that,

in its view, "both defense counsels [sic] were well informed, prepared, effectively raised

objections, cross examined witnesses and put on a viable defense strategy." (Exhibit 7 at

4).   As such, even assuming Petitioner's ineffective assistance of counsel claim was

procedurally viable, he has failed to establish that the state court's denial of that claim was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States.

Accordingly, Petitioner's claim for habeas relief based on a theory of ineffective

assistance of counsel should be DENIED.

### 2.    Admission of Petitioner's Statements

In his second claim for habeas relief, Petitioner alleges that the trial court erred when

it admitted into evidence incriminating statements that Petitioner made to the police.

Specifically, Petitioner claims that he was not given his <u>Miranda</u> warnings, that his

interrogation improperly continued despite his request to speak with an attorney, and that his

statements should have been suppressed due to the length of his interrogation.  Respondent

argues that Petitioner's statements were voluntary and were therefore properly admitted.[15]

---

[15]It should be noted that Respondent failed to include its arguments with respect to Petitioner's grounds two and three in its Reply Memorandum of Law in Response to the instant Second Amended Petition.  <u>See</u> (Docket No. 55).  Rather, for Respondent's own convenience, it decided to refer this Court to Docket No. 16 to find its response to Petitioner's second and third grounds for habeas relief.  However, due to the volumes of state court records and federal court records, such a task is not efficiently done.  It would have been much easier and efficient for Respondent to have "cut" and "pasted" their prior response into their most recent reply memorandum instead of asking this Court to waste its time referring back and

The trial court made the following findings of fact with respect to Petitioner's statement to police on March 25, 1993:[16]

> [O]n or about March 25, 1993 . . . the defendant was advised of his Miranda rights by Investigator Donald Hilton prior to his interrogation.  The defendant then knowingly and voluntarily waived those rights and agreed to speak with the police regarding the Milo homicide.  Thereafter, the defendant was interviewed by Investigator Lynch from approximately 2:30p.m. to 7:30p.m. and Investigator Patnode from 8:05p.m. to 2:00a.m. on March 26, 1993.

(SR at A644-645).  These findings of historical fact must be "presumed to be correct" for purposes of this Petition.  28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001).  Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"The admissibility of a confession has long been recognized as a mixed question of law and fact."  Smith v. Sullivan, 1 F.Supp. 2d 206, 211 (W.D.N.Y. 1998) (citing Miller v. Fenton, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); Townsend v. Sain, 372 U.S. 293, 309, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)).  Therefore, the state courts' determination of this issue is absolved from collateral federal review unless it is an "unreasonable application" of clearly established federal law as determined by the Supreme Court.  See id. (citing Carter v. Johnson, 110 F.3d 1098, 1108 (5th 1Cir. 1997)

---

forth between reply memorandums.  This Court requests that the New York State's Attorney General's office take into consideration, upon filing of its next reply memorandum, the principal of judicial economy.

[16]These "Findings of Fact" were in supplement to Judge McCarthy's original "Findings of Fact" dated August 31, 1994.  Judge McCarthy's August 31, 1994 decision to suppress Petitioner's statement had been reversed by the Appellate Division, Fourth Department.  See People v. Steward, 630 N.Y.S.2d 187 (4th Dep't 1995).  That reversal was affirmed by the Court of Appeals on June 11, 1996.  People v. Steward, 88 N.Y.2d 496 (1996).  Thereafter, Judge McCarthy made these supplemental "Findings of Fact" and concluded that Petitioner's statement on March 25, 1993 was voluntarily made after receiving proper Miranda warnings.

(characterizing this standard of review as "akin to the 'clearly erroneous' standard")).

As noted above, Petitioner makes three arguments regarding the admission of his statements.  This Court will address each argument in turn.

### a.   Alleged Failure to Provide <u>Miranda</u> Warnings

First, Petitioner contends that his statements should have been suppressed because the police officer failed to give the <u>Miranda</u> warnings.  However, as noted above, the trial court evaluated the testimony of Petitioner and Officer Hilton and found the latter's testimony that Petitioner had been given the <u>Miranda</u> warnings to be more credible.

"Absent clear and convincing evidence, this Court is not permitted to re-evaluate the credibility of witnesses not before it, and has no basis here to disturb the state court's credibility determinations." <u>Tibbs v. Greiner</u>, No. 01-civ-4319, 2003 WL 1878075, *9 (S.D.N.Y. Apr. 16, 2003) (citing <u>Tirado v. Walsh</u>, 168 F.Supp.2d 162, 170 (S.D.N.Y.2001) ("It is not within the purview of a federal court on habeas review to reassess and pass judgment upon the credibility of a witness whose testimony and demeanor it has not observed.").

Accordingly, "where petitioner took issue with the trial court's assessment of [the detective's] credibility and its decision to . . . credit [the detective's] testimony at the suppression hearing ..., [the habeas] Court decline[d] to entertain [petitioner's] credibility claim . . . ." <u>Tibbs</u>, 2003 WL 1878075, at *9 (collecting cases).

Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness that must be afforded to the trial court's finding.  In addition, this Court has carefully reviewed the hearing transcript and finds that there is no indication that the trial

court's conclusion was based upon an unreasonable determination of the facts.  As such, Petitioner is not entitled to relief on this claim.  See, e.g. Barratt v. Garvin, No. 98-CIV-1532, 2000 WL 1364352, at *7 (S.D.N.Y. Sep. 21, 2000); Mackenzie v. Portuondo, 208 F. Supp.2d 302, 324 (E.D.N.Y. 2002); Towndrow v. Kelly, No. 98-CV-0509, 2000 WL 33743385, at *4 (N.D.N.Y. Dec. 20, 2000).

### b.    Alleged Continued Interrogation After Request for Counsel

Second, Petitioner argues that the trial court should have suppressed his statements because the police continued to question him even after he requested a lawyer.  However, as previously discussed, the trial court concluded, after a full and fair hearing, that Petitioner knowingly and voluntarily waived his right to have an attorney present.

This Court finds that Petitioner has failed to show that the trial court's finding in this regard was clearly erroneous or based upon an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on this ground.  See Linares v. Greiner, No. 02-CV-1844, 2003 WL 23864914, at *27 (E.D.N.Y. Oct. 24, 2003) (aff'd, 120 Fed. Appx. 852, 2005 WL 180958 (2d Cir. 2005)) (holding that state court's finding that statement was voluntary was not unreasonable, notwithstanding defendant's claim that interrogation continued after assertion of right to counsel).[17]

---

[17]In addition, even if this Court were to construe the Petition as raising a claim that Petitioner's Sixth Amendment right to counsel was violated, such a claim would not succeed because formal adversary judicial proceedings had not been commenced when Petitioner was interrogated.  To wit, the statements at issue were made while Petitioner was in custody for a parole violation.  Grimes v. Goord, 371 F. Supp. 2d 305, 319 (W.D.N.Y. 2004) (noting that "'the right to counsel only comes into existence "at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'") (quoting Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)); see also Moran v. Burbine, 475 U.S. 412, 428-32, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (no right to counsel at custodial interrogation prior to initiation of adversary judicial criminal proceedings).

### c.    Length of Interrogation

Third and finally, Petitioner claims that his statements should have been suppressed because of the length of his interrogation.  It should be noted that this claim was never raised at Petitioner's <u>Huntley</u> hearing, nor at trial.   However, the Appellate Division addressed the issue, affirmed the trial court's analysis of the totality of the circumstances of the interrogation, and concluded that "[t]he fact that the interrogation lasted nearly 10 hours [did] not render the admissions involuntary, given the nature of the crime and defendant's conflicting and constantly changing stories to the police."  <u>People v. Steward</u>, 684 N.Y.S.2d at 110.

To obtain relief based upon this claim, Petitioner must show that the Appellate Division's conclusion as to this issue involved an unreasonable interpretation of Supreme Court precedent or based upon an unreasonable determination of the facts.

In <u>Dickerson v. United States</u>, 530 U.S. 428, 434, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000), the Supreme Court held that to determine whether a statement was voluntary, the trial court must decide "whether a defendant's will be overborne" by the circumstances of the interrogation.  <u>See</u> <u>also</u> <u>Walker v. Goord</u>, 427 F. Supp.2d 272, 275 (W.D.N.Y.2006) ("'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'")(quoting <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir.1997)).

The state court's findings as to "'subsidiary questions, such as the length and

circumstances of [an] interrogation,' or whether 'the police engaged in the intimidation tactics alleged by the defendant, are entitled to the presumption of correctness.'" <u>Walker</u>, 427 F. Supp. 2d at 276 (quoting <u>Nelson</u>, 121 F.3d at 833); <u>see</u> <u>also</u> <u>Towndrow</u>, 2000 WL 33743385, at *4.

In the present case, it appears that the Appellate Division employed the correct standard, as established by the Supreme Court.  Further, this Court finds that Petitioner has failed to demonstrate that the state court's determination in this regard involved an unreasonable interpretation of the established standard or was based upon an unreasonable determination of the facts.  <u>See</u> <u>Holland v. Donnelly</u>, 216 F. Supp. 2d 227, 233-37 (S.D.N.Y. 2002) (finding that state court's determination as to voluntariness of petitioner's confession was not unreasonable, despite fact that petitioner remained in interview room for nineteen hours); <u>cf</u> <u>also</u> <u>Tobias v. Portuondo</u>, 367 F. Supp. 2d 384, 393-95 (W.D.N.Y. 2004) (holding that admission of statements was not unreasonable, notwithstanding interrogation lasting eight to ten hours).

In sum, based upon the foregoing reasons, it is recommended that Petitioner's habeas corpus claim based upon the admission of his statements should be DENIED.


**3.    Testimony Regarding Drug Use**

Petitioner's third and final claim for relief is that the trial court erred in permitting certain testimony regarding Petitioner's drug use.  The Appellate Division rejected this argument, concluding that the "[t]estimony concerning defendant's drug use was properly received on the issue of motive, and a limiting instruction regarding that testimony was given without objection."  <u>People v. Steward</u>, 684 N.Y.S.2d at 110.

24

As this Court has previously noted, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Williams v. Phillips, 433 F. Supp.2d 303, 315 (W.D.N.Y. 2006)(quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998)).   "The task for the habeas court is to determine 'whether the erroneously admitted evidence, viewed objectively in light of the entire record . . . was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985)).

In the present case, even assuming that the evidence of Petitioner's drug use should not have been admitted, any such error was harmless.  The remaining evidence was more than sufficient to provide the basis for Petitioner's conviction beyond a reasonable doubt. The remaining evidence included Petitioner's own statement to police that he was at the scene the night Milo was murdered, and that he hit Milo over the head with a barbell.  (T at 825-826, 1051-1053).  Additionally, Petitioner knew and provided to police many of the details of the crime scene and the condition of the victim  that no other witness provided. (T at 891).   Given this evidence, this Court is not persuaded that the evidence of Petitioner's drug use, even if arguably erroneous, was sufficiently material to remove a reasonable doubt that would have existed on the record without it.

Accordingly, Petitioner's claim for habeas relief on this ground should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Thomas Steward's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not  issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      July 23, 2007
            Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and**

72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).


SO ORDERED.

July 23, 2007

Victor E. Bianchini
United States Magistrate Judge